UNITED STATES of America

v.

Gerald WALLACE.

Crim. A. No. 15558.

United States District Court
W. D. Pennsylvania.

March 10, 1959.

942

Hubert I. Teitelbaum, U. S. Atty., Daniel J. Snyder, Asst. U. S. Atty., Pittsburgh, Pa., for U. S.

H. David Rothman, Pittsburgh, Pa., for defendant.

McILVAINE, District Judge.

The defendant, after the trial by jury, was found guilty of violation of the narcotics laws contrary to the provisions of Section 174, Title 21 U.S.C.A.

Thereafter, through counsel, he filed a motion for judgment of acquittal alleging (1) that under all the testimony, entrapment as a matter of law was established, and (2) that he did not engage in the sale, but was a mere procuring agent for the Government. In the alternative he sought a new trial.

There is very little dispute on the evidence. Narcotics Agent Charles G. Hill, operating as an undercover agent, together with a special employee, William Patton, went to the residence of the defendant on April 28, 1958, around 11:00 a. m. Both Hill and Patton were known to the defendant as all were schoolmates when they were younger, but defendant had not seen Mr. Hill for several years before the events in question. Patton knocked first, and Hill stayed out of sight. Patton requested the defendant to obtain narcotics for a friend of his. Agent Hill was brought in and was introduced as Patton's friend and, of course, was recognized by defendant as his old schoolmate. Wallace expressed surprise that Hill would be a user. Hill told the defendant that he, Hill, wished to purchase "two spoons" for $35, and paid the money to Wallace after which Wallace left the house. About four hours later, Wallace came back and handed a package to Catherine Washington, who had been in the house during the entire transaction, and told her to take the package upstairs and make two spoons for Hill. Then Wallace went upstairs after Catherine Washington and in about five minutes came back and handed Hill two small brown paper packages sealed with Scotch tape. Later it was proved to be 35 grains of heroin.

The defendant testified that he had gone to school with Hill and only sold to him because of his friendship, and asserted the defense of entrapment.

The Court charged on the issue of entrapment at length, and the defendant took no objection to the charge in any respect. The issue of entrapment was submitted to the jury, and they found the defendant guilty. Thereafter, the Court proceeded to impose sentence, but before the imposition of sentence a conference was held with the Assistant United States Attorney in charge of the case and defendant's counsel. The Court was, after such conference, of the opinion that it could pronounce sentence in this case under the Youth Correction Act, Title 18, Section 4209, United States Code, as it was amended to apply to young adult offenders pursuant to Title 18, Section 4209, United States Code. The Court sentenced him under that Act to a total of seven years. Upon it being discovered that the Act expressly exempted any offense for which there is a mandatory penalty, the Court the next day resentenced the defendant to a mandatory five years imprisonment, 21 U.S.C.A. § 174.

At the argument on the motions, the defendant's position through his counsel was that the change in sentence was erroneous, that is, the change from sentencing him as a young adult offender to the mandatory imprisonment. In addition he contends that the record shows that the first approach was made by the agent of the law to an apparently innocent man and, therefore, entrapment should have been found as a matter of law. The defendant did claim that he was only a procuring agent under the evidence and that that entitled him to a directed verdict of acquittal, but at the argument on his motion for acquittal this position was abandoned. Defendant moved for a directed verdict of acquittal at the conclusion of the Government's case, but did not move for acquittal at the close of all the evidence.

■ Concerning the first question raised, that of imposition of sentence, first of all the fixing of penalties for a criminal offense is a legislative function. Martin v. United States, 10 Cir., 1938, 100 F.2d 490, 497.

■ The legislature may exercise reasonable discretion in fixing punishment for crime, and the courts may exercise judicial discretion in fixing punishment within the limits so prescribed. United States v. Meyers, D.C., 143 F.Supp. 1.

■ Here the Congress exercised its discretion in fixing penalties for this crime. We cannot say as a matter of law the exercise of that discretion was unreasonable. The Court imposed punishment within the limits so prescribed by Congress and, therefore, the imposition of the minimum mandatory sentence under the narcotics laws is constitutional.

■ The issue of entrapment, however, requires further discussion. The defendant states the issue to be:

"Where agents and employees of the United States induced an otherwise innocent man to sell narcotics to them, and where the record is completely devoid of any evidence of past acts of defendant which afforded the government with reasonable grounds for believing the accused was engaged in the particular unlawful business charged, is not entrapment established as a matter of law?"

The Government states the issue another way:

"Is it sufficient to show predisposition to make sale of narcotics, to show ready response to instant situation?"

The Government concedes that the record would indicate this man to be an apparently innocent man and concedes that the first approach was made by the agent of the law. However, there is evidence that Wallace was a user of narcotics.

Everyone agreed that the entrapment defense was relied on in this case and that the Government made no effort to show that reasonable grounds existed for believing that the accused was engaged in the unlawful business charged. There is no question that a public officer solicited the particular violation, but it

also conceded by all the parties that there is evidence from which the jury could find that the defendant was already disposed to such wrongdoing if you take into consideration his ready response to the particular request. It is not disputed that there was evidence from which the jury could say whether or not the defendant was disposed to trade in narcotics or yielded to importunations contrary to his own inclination. The jury, of course, decided against the defendant. As stated before, there is no objection raised as to the trial procedures, nor to the charge of the Court.

Granted that the United States Court of Appeals for the Ninth Circuit has stated in Carlton v. United States, 1952, 198 F.2d 795, 798:

"* * * once the entrapment defense is relied on the burden falls upon the prosecution to show that reasonable grounds existed for believing that the accused was engaged in the particular unlawful business charged."

nevertheless, the United States Court of Appeals for the Third Circuit in United States v. Sawyer, 210 F.2d 169, 170, states that the criminal disposition of the defendant is often revealed by his response to the request of the government agent.

In United States v. Klosterman, 3 Cir., 1957, 248 F.2d 191, 195, the Court there stated:

"In this framework of fact, we are asked to determine the origin of the criminal intent. Whether the design is the product of official activity or of the defendant's mind is often disclosed by the amount of persuasion needed on the part of the government agent to move the defendant to the criminal conduct. Another way of stating this rule is to say that the criminal disposition of the defendant is often revealed by his response to the requests of the government agent. United States v. Sawyer, 3 Cir., 210 F.2d at page 170."

The defendant's counsel strenuously argues that Sawyer is limited by the statement included in Klosterman, supra, 248 F.2d at page 196 wherein the Court stated:

"We do not think that the degree of persuasion is significant where the first approach is made by the agent of the law to an apparently innocent man."

A short answer to this might be that in this particular case no persuasion as such was necessary to have Wallace carry out his criminal act. However, I think that United States v. Sawyer, supra, is still the law of the circuit in regard to entrapment by one engaged in the narcotics' trade. It is quoted with approval in Klosterman, supra, and nothing in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed. 848, indicates the need of any change from the principle laid down there.

A particular apt expression from United States v. Sawyer, supra, 210 F.2d at page 170, applies directly to this case:

"In the present case it seems not to be disputed that a public officer solicited the particular violation. But even so, there could be no entrapment if the defendant was already disposed to such wrongdoing, awaiting only an advantageous and apparently safe opportunity. Such disposition or its absence may be evidenced in various ways, including response to the particular request and, in some situations, by a revealing recent course of conduct or activity."

If a "revealing recent course of conduct or activity" is necessary in *all* situations, even where there is a ready response, then the courts are going to be faced with the allowance of hearsay or prejudicial testimony to the prejudice of the defendant in a criminal case or law enforcement in this field will suffer a serious setback.

The Court does not think that the second statement quoted from Klosterman was intended to restrict Sawyer. This

Court feels that United States v. Sawyer, supra, is still the law of this circuit as to entrapment in a narcotic case. If this is not the law, any change will have to come from some other court rather than this trial court. If Sawyer as stated with no modification is still the law, defendant's counsel concedes that his argument fails.

In this case the defendant was ably represented by court-appointed counsel serving without compensation. While it is true that a motion for judgment of acquittal was not made at the close of all the evidence, nevertheless, we felt that the question of entrapment is of such importance that an expression of the Court's views on this subject was essential rather than passing on a technical point when deciding the case on its merits prejudices no one. Therefore, the motion for judgment of acquittal or for a new trial must be denied.